# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **WYATT JOSEPH PASEK,** | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | No.  3:25-CV-00301-LS |
| | § | |
| **CHARISMA EDGE, WARDEN FCI LA** | § | |
| **TUNA,** | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Petitioner Wyatt Joseph Pasek, Federal Prisoner Number 76120-112, seeks a writ of habeas corpus under 28 U.S.C. § 2241 challenging his sentence's execution.[1] The Court denies his petition.

## I.     BACKGROUND.

Pasek is a 29-year-old prisoner confined at the La Tuna Federal Correctional Institution in Anthony, Texas.[2] His projected release date is September 30, 2030. Pasek conspired with others in Newport Beach, California, to manufacture, possess, and distribute fentanyl, a Schedule II controlled substance, and alprazolam, a Schedule IV controlled substance.[3] The conspirators used the fentanyl to manufacture counterfeit pills which appeared as legitimate thirty milligram pharmaceutical grade Oxycodone. They used the alprazolam to manufacture counterfeit pills which appeared as legitimate two milligram pharmaceutical grade Xanax. They operated a marketplace on the dark web to sell the counterfeit drugs and shipped parcels containing their

---

[1] ECF No. 1.

[2] *See Find an Inmate*, Fed. Bureau of Prisons, www.bop.gov/inmateloc (search for Reg. 76120-112) (last visited Apr. 13, 2026).

[3] Gov't's Obj. to Presentence Report, *United States v. Pasek*, 8:18-cr-72 (C.D. Cal.), ECF No. 136 at 5–8.

counterfeit pills through the U.S. Postal Service to various locations. Pasek also possessed a Glock 9mm handgun after his prior felony conviction for drug trafficking in case number 14HF2107 in the Orange County Superior Court for the State of California. He also purchased an Audemars Piguet Royal Oak Offshore watch for $26,800 in cash using proceeds from the drug trafficking conspiracy.

Pasek pleaded guilty to conspiracy to manufacture, possess, and distribute fentanyl and its analogues as well as alprazolam in violation of 21 U.S.C. §§ 846, 841(b)(1)(c), felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(1)(D)(2), and laundering monetary instruments in violation of 18 U.S.C. § 1957.[4] He was sentenced to concurrent 210-month terms of imprisonment on each count.

In his petition, Pasek asserts that the Bureau of Prisons ("BOP") exceeded the authority Congress granted to it under 18 U.S.C. § 3621(e) when it promulgated 28 C.F.R. § 550.55(b)(5).[5] He explains that the statute permits the BOP to reduce a prisoner's sentence upon successful completion of a residential substance abuse treatment program but argues the regulation improperly disqualifies prisoners with firearm convictions from receiving the reduction. He also argues 28 C.F.R. § 523.42(a) defines a sentence's start contrary to 8 U.S.C. § 3632(d)(4)(B)(ii) and may cause the BOP to wrongfully deny a prisoner First Step Act Earned Time Credits ("FTCs").[6] He seeks declaratory and injunctive relief directing Respondent Charisma Edge to consider a one-year reduction in his sentence under 18 U.S.C. § 3621(e) for successfully completing a residential substance abuse program—and to grant him FTCs from the commencement of his sentence until his receipt into BOP custody.

---

[4] J. & Commitment Order, *United States v. Pasek*, 8:18-cr-72 (C.D. Cal.), ECF No. 156.
[5] ECF No. 1 at 7.
[6] *Id*.

## II.    STANDARD OF REVIEW.

### A.    28 U.S.C. § 2241.

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. To prevail, a prisoner must show "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."[7]

### B.    Exhaustion.

A federal prisoner seeking § 2241 relief "must first exhaust his administrative remedies through the Bureau of Prisons."[8] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."[9] Failure to exhaust administrative remedies is only excused if the "remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action."[10]

### C.    Rulemaking.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."[11] A regulation survives judicial scrutiny only when the statutory text shows that BOP has "'clear congressional authorization' for the power it claims" to enact the regulation.[12] "An agency's promulgation of

---

[7] 28 U.S.C. § 2241(c)(3).

[8] *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990)).

[9] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

[10] *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1005 (5th Cir. 1983)).

[11] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).

[12] *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022) (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014)).

rules without valid statutory authority implicates core notions of the separation of powers, and [courts] are required by Congress to set these regulations aside"[13]:

> Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the [Administrative Procedures Act ("APA")] requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.[14]

## III.    ANALYSIS.

### A.    Exhaustion.

Pasek does not claim that he exhausted his BOP administrative remedies.[15] And his BOP records show that he has not submitted any administrative remedy requests during his term of imprisonment.[16] He argues that it was "futile for him to make an [a]dministrative challenge seeking this relief from those who are charged to enforce the regulation."[17] Pasek does not claim the BOP misapplied the regulations to determine his projected release date. Instead, he argues that the two regulations exceed the authority Congress granted to the BOP. Thus, it would have been futile for Pasek to seek relief from the agency that enforces the regulations, and he need not exhaust his administrative remedies before pursuing his claims in federal court.[18]

### B.    28 C.F.R. § 550.55(b)(5).

Under 28 C.F.R. § 550.55(b)(5)(ii), Pasek's felony conviction involving a firearm disqualifies him from early release upon his completion of a substance abuse treatment program

---

[13] *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998) (citing 5 U.S.C. § 706(2)(C) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory . . . authority . . . .")).

[14] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

[15] ECF No. 1 at 3.

[16] *See* ECF No. 9-3 at 5, 11.

[17] ECF No. 13 at 2 (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012)).

[18] *Gallegos-Hernandez*, 688 F.3d at 194.

under 18 U.S.C. § 3621(e). He argues that the Court should strike the regulation because it exceeds the BOP's authority.[19]

In 18 U.S.C. §§ 3621–3625, Congress vested the BOP with broad authority to manage a convicted person's imprisonment. Congress amended § 3621 in 1990 to provide: "[t]he Bureau shall . . . make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."[20] Congress amended § 3621 again in 1994 to encourage prisoner participation in substance abuse treatment programs:[21]

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.[22]

This provision categorically denies early release eligibility to inmates convicted of violent offenses. The question thus becomes whether the BOP has discretion to additionally disqualify inmates whose current offense is a nonviolent felony involving a firearm.

In *Lopez v. Davis*,[23] the Supreme Court explained that, under 18 U.S.C. § 3621(e)(2)(B), "[w]hen an eligible prisoner successfully completes drug treatment, the Bureau . . . has the authority, *but not the duty*, . . . to reduce his term of imprisonment."[24] It held that the BOP could, within its discretion, categorically deny early release eligibility to an inmate who possessed a firearm in connection with his current offense.[25] Indeed, the Supreme Court concluded that the categorical exclusion of such an inmate in the 1997 interim rule was a reasonable exercise of that discretion:

---

[19] ECF No. 1 at 7.

[20] Crime Control Act of 1990, Pub. L. No. 101-647, § 2903, 104 Stat. 4789, 4913.

[21] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 32001, 108 Stat. 1796, 1897 (emphasis added) (codified at 18 U.S.C. § 3621(e)(2)(B)).

[22] 18 U.S.C. § 3621(e)(2)(B).

[23] 531 U.S. 230 (2001).

[24] *Id.* at 241 (emphasis added).

[25] *Id*. at 240.

Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.[26]

"*Lopez*, however, did not dispositively establish the validity of the categorical exclusion" because "the Court expressly declined to consider whether the . . . rule complied with the APA."[27]

Consequently, the BOP adopted a new version at 28 C.F.R. § 550.55, effective March 16, 2009, which provided a much more detailed rationale for the categorical exclusion to meet the APA's requirements[28]:

As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release: . . . (ii) [an inmate with a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device).[29]

The comments on the new version of the regulation published in the Federal Register explained:

Under 18 U.S.C. 3621(e), the Bureau has the discretion to determine eligibility for early release consideration (*See Lopez v. Davis*, 531 U.S. 230 (2001)). The Director of the Bureau exercises discretion to deny early release eligibility to inmates who have a felony conviction for the offenses listed in §§ 550.55(b)(5)(i)-(iv) because commission of such offenses illustrates a readiness to endanger the public. Denial of early release to all inmates convicted of these offense rationally reflects the view that, in committing such offenses, these inmates displayed a readiness to endanger another's life.

The Director of the Bureau, in his discretion, chooses to preclude from early release consideration inmates convicted of offenses involving carrying, possession or use of a firearm and offenses that present a serious risk of physical force against person or property, as described in § 550.55(b)(5)(ii) and (iii). Further, in the correctional experience of the Bureau, the offense conduct of both armed offenders and certain recidivists suggest that they pose a particular risk to the public. There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the

---

[26] *Id*. at 244.
[27] *Handley v. Chapman*, 587 F.3d 273, 278 (5th Cir. 2009).
[28] 28 C.F.R. § 550.55.
[29] *Id.* § 550.55(b)(5).

view that such inmates displayed a readiness to endanger another's life." *Id*. at 240. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.[30]

In *Handley v. Chapman*,[31] the Fifth Circuit held that the BOP's new regulation survived the APA's arbitrary-and-capricious standard[32]:

> [P]ublic safety was the contemporaneous rationale for the BOP's categorical exclusion. The agency's path may be readily discerned from its prior interim rules, Program Statements, and consistent litigation position.[33]

Pasek now asserts that the issue is whether the categorical exclusion in 28 C.F.R. § 550.55(b) is invalid under 5 U.S.C. § 706(2)(C) because it exceeded the BOP's authority.

The statute granting authority to the BOP to reduce a prisoner's sentence, 18 U.S.C. 3621(e)(2)(B), establishes two prerequisites for early release: (1) a conviction for a nonviolent offense, and (2) the successful completion of a residential substance abuse treatment program. If a prisoner meets those prerequisites, the BOP "may" grant the prisoner early release. Notably, Congress did not address how the BOP should decide which prisoners satisfying both statutory prerequisites garner early release. But the Supreme Court, as noted above, did determine in *Lopez* that the BOP's categorical exclusion of prisoners with a felony firearm conviction was reasonable:

> Congress' use of the permissive "may" in § 3621(e)(2)(B) contrasts with the legislators' use of a mandatory "shall" in the very same section. Elsewhere in § 3621, Congress used "shall" to impose discretionless obligations, including the obligation to provide drug treatment when funds are available. Sensibly read, the grant of discretion in § 3621(e)(2)(B) to decide whether to reduce a sentence parallels the grant of discretion in § 3621(e)(2)(A) to retain a prisoner who successfully completes drug treatment "under such [custodial] conditions as the

---

[30] Drug Abuse Treatment Program: Subpart Revision and Clarification and Eligibility of D.C. Code Felony Offenders for Early Release Consideration, 74 Fed. Reg. 1892, 1895 (Jan. 14, 2009); *see also* Drug Abuse Treatment Program, 81 Fed. Reg. 24484, 24487 (Apr. 26, 2016) (rejecting a proposal that inmates with gun possession offenses should be eligible for early release for the same reasons).

[31] 587 F.3d 273 (5th Cir. 2009).

[32] *Id.* at 282 (citing 5 U.S.C. § 706(2)(A)).

[33] *Id.*

> Bureau deems appropriate." When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment. . . . In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design." We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.[34]

Accordingly, the BOP in 28 C.F.R. § 550.55(b)(5) denies early release to inmates convicted of crimes involving firearms not because they committed "crimes of violence," but rather as an exercise of the BOP's discretion under § 3621.[35]

Pasek argues that *Lopez* is no longer good law because the *Lopez* Court relied on *Chevron* deference[36] to uphold the regulation, and the Court overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*.[37] This argument is unavailing. Although *Lopez* relies on *Chevron* in part, *Loper Bright* recognizes that, in some cases, the correct interpretation of a statute "may well be that the agency is authorized to exercise a degree of discretion."[38] The relevant statute affords the BOP discretion to reduce an inmate's sentence upon completion of a drug treatment program by using the permissive "may" instead of the mandatory "shall."[39] *Loper Bright* does not invalidate the

---

[34] *Lopez*, 531 U.S. at 241–42 (citations omitted) (quoting 18 U.S.C. § 3621(e)(2)(B); *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251 (1995)).

[35] *Id*. at 244.

[36] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations 'has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations." (cleaned up) (quoting *United States v. Shimer*, 367 U.S. 374, 382–83 (1961))).

[37] *See* ECF No. 13 at 5.

[38] *Loper Bright*, 603 U.S. at 394.

[39] *See* 18 U.S.C. § 3621 ("The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."); *accord Lopez*, 531 U.S. at 241.

statute's grant of discretion to the BOP nor the BOP's lawful exercise of that discretion to limit which inmates receive sentence reductions.

The Court, exercising its independent judgment, finds that the BOP has the "clear congressional authorization" necessary to enact in 28 C.F.R. § 550.55. The Court further finds that 28 C.F.R. § 550.55(b)(5)(ii) does not exceed the statutory jurisdiction, authority, or limitations in § 3621(e)(2)(B), is not invalid under 5 U.S.C. § 706(2)(C), and need not be struck from the Federal Register as Pasek suggests. The Court accordingly holds that Pasek is ineligible for a sentence reduction under § 3621(e)(2) for successfully completing a residential substance abuse program because he has a current felony conviction for an offense involving the possession of a firearm.

### C.    28 C.F.R. § 523.42(a).

Pasek further complains that 28 C.F.R. § 523.42(a) contradicts 18 U.S.C. § 3632(d)(4)(B)(ii) and 18 U.S.C. § 3585(a).[40] He argues that 28 C.F.R. § 523.42(a), which provides: "[a]n eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences," contradicts both 18 U.S.C. § 3632(d)(4)(B)(ii)—which states: "[a] prisoner may not earn time credits . . . during official detention prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)—and 18 U.S.C. § 3585(a): "[a] sentence . . . commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

The First Step Act ("FSA") allows an eligible prisoner to earn FTCs toward time in pre-release custody or supervised release.[41] To determine eligibility, the FSA requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium,

---

[40] ECF No. 1 at 7.
[41] 18 U.S.C. § 3632(d)(4)(A).

or high risk for recidivism."[42] The risk and needs assessment has two components: the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score and the Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13").[43] The PATTERN score is designed to: (1) determine a prisoner's recidivism risk; (2) assess a prisoner's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce a prisoner's risk of reoffending; (4) regularly assess a prisoner's recidivism risk and programming needs; and (5) determine when a prisoner is ready to transfer to prerelease custody or supervised release.[44] The SPARC-13 examines areas the BOP can target to reduce a prisoner's recidivism risk. Based on its results, the BOP recommends evidence-based recidivism reduction ("EBRR") programs and productive activities ("PAs") consistent with the prisoner's needs.

The FSA also creates incentives to encourage prisoners to participate in EBRR programs and PAs.[45] It affords qualifying prisoners the opportunity to earn ten days of FTCs for every thirty days of successful participation in EBRR programs and PAs.[46] Qualifying offenders at a "minimum" or "low risk" of recidivating can earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments[47] and apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement.[48] Qualifying prisoners can apply FTCs toward their early release to supervision at the BOP's discretion.[49]

---

[42] Id. § 3632(a)(1).
[43] ECF No. 9-2 at 3–4.
[44] 18 U.S.C. § 3632(a).
[45] Id. § 3632(d).
[46] Id. § 3632(d)(4)(A)(i).
[47] Id. § 3632(d)(4)(A)(ii).
[48] Id. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c).
[49] 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Additionally, "[a] prisoner may *not* earn time credits . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."[50] "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."[51] Pasek was sentenced on August 26, 2019.[52] He arrived at his first BOP designated facility on August 18, 2020.[53] At that time, he underwent the risk and needs assessment and then was able to successfully participate in recommended EBRR programming and PAs. As of October 17, 2025, he had accrued 620 FTCs.[54] His first 365 FTCs apply toward early transfer to supervised release. The FTCs changed his anticipated release date, which already accounted for his projected good conduct time credits, from September 30, 2031, to September 30, 2030.[55]

Multiple district courts in the Fifth Circuit have denied habeas relief where inmates sought FTCs for the period between their sentencing and their arrival at a designated BOP facility.[56] At

---

[50] 18 U.S.C. § 3632(d)(4)(B) (emphasis added).

[51] *Id*. § 3585(a).

[52] J. & Commitment Order, *Pasek*, 8:18-cr-72 (C.D. Cal.), ECF No. 156.

[53] ECF No. 9-2 at 5.

[54] *Id*. at 14.

[55] *Id*. at 12.

[56] *See, e.g.*, *Lopez v. Edge*, No. EP-25-cv-390, 2026 WL 800757, at *4 (W.D. Tex. Mar. 23, 2026) (citing Order Granting Respondent's Motion for Summary Judgment and Denying Petitioner's Petition, *Hogan v. Hijar*, EP-24-cv-360 (W.D. Tex. April 4, 2025), ECF No. 14 at 4–6 (denying petition where inmate sought credits from the date of sentencing until his arrival at his designated BOP facility 305 calendar days later and noting that "[t]here are several practical reasons for denying a prisoner ETCs before he enters BOP custody," including, among others, "because the prisoner has not completed the risk and needs assessment, BOP staff members cannot make a recommendation concerning his participation in an EBRR program or PA")); *Stinson v. Martinez*, No. 2:23-cv-0751, 2024 WL 4969169, at *3–8 (W.D. La. Nov. 12, 2024) ("Because Petitioner did not undergo a risk and needs assessment until he arrived at his designated BOP facility, it follows that he could not have 'successfully participated' in any recommended programming before that time. . . . To allow an inmate to earn time credits outside of the system established by the FSA would essentially void large portions of the FSA and render them meaningless."), *R. & R. adopted by* 2024 WL 4965618 (W.D. La. Dec. 3, 2024), *cert. denied before judgment*, 145 S. Ct. 1345 (2025), *and appeal dismissed as moot*, No. 24-30793, 2025 WL 2017872 (5th Cir. July 18, 2025).

least two district courts have reached a different conclusion.[57] Pasek observes that, under 18 U.S.C. § 3621(h)(6), "[t]he Director of the Bureau of Prisons shall provide all prisoners with the opportunity to actively participate in evidence-based recidivism reduction programs or productive activities, according to their specific criminogenic needs, throughout their entire term of incarceration." He adds that 18 U.S.C. § 3635(4) defines the term "prisoner" to include "a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons." He argues the "logistical failure on the B.O.P. to ensure prisoners the opportunity to participate in FSA programing as required by statute" should not justify denying them FTCs.

Whether the BOP failed to comply with 18 U.S.C. § 3621(h)(6) is separate and distinct from whether a prisoner has met the preconditions for accumulating FTCs under 18 U.S.C. § 3632(d)(4)(B). The Court, exercising its independent judgment, finds that 18 U.S.C. § 3632(d)(4)(B) and 18 U.S.C. §3585(a) establish "clear congressional authorization" for the BOP to enact 28 C.F.R. § 523.42(a) because: (1) the statute prohibits a prisoner from earning FTCs during official detention prior to the date that his sentence commences, which occurs on the date the BOP receives him into custody at the official detention facility where he will serve his sentence,[58] (2) the BOP staff cannot make a recommendation concerning a prisoner's participation in an EBRR program or PA until he has completed a BOP risk and needs assessment,[59] (3) the

---

[57] *See Baker v. Rosalez*, 1:24-cv-1362, 2025 WL 2299373, at *1–2 (W.D. Tex. Aug. 8, 2025) (adopting R. & R. that "found, like numerous other courts, that inmates become eligible to earn time credits under the [FSA] beginning on their sentencing date" and ordering that respondent recalculate petitioner's FTCs to include time spent in custody awaiting transfer to his designated BOP facility); *Brenneman v. Salmonson*, No. 5:22cv7, 2025 WL 957216, at *7 (E.D. Tex. Feb. 25, 2025), *R & R adopted by* No. 5:22-cv-7, 2025 WL 914352 (E.D. Tex. Mar. 26, 2025) ("Petitioner has not argued the risk assessment tools need not be completed before the calculating or applying his time credits, but that such tools should look backwards to the date the sentencing commences to determine the time credits he can possibl[y] earn.").
[58] 18 U.S.C. § 3632(d)(4)(B)(ii)
[59] *Id*. § 3632(a)(1).

BOP staff likely cannot conduct a risk assessment or monitor the quality of an EBRR program or PA while a prisoner is in official detention at a non-BOP facility prior to commencing a sentence in a BOP facility, and (4) allowing an inmate to earn FTCs outside of the FSA's system would essentially render large portions of the FSA meaningless. The Court accordingly holds that 28 C.F.R. § 523.42(a) is not invalid based on any alleged contradiction or incompatibility with 18 U.S.C. § 3632(d)(4)(B)(ii) or 18 U.S.C. § 3585(a).

The Court additionally finds that Pasek was not entitled to accumulate FTCs before his arrival at his designated BOP facility on August 18, 2020, and Pasek has not provided evidence that he participated in and successfully completed any EBRR programs or PAs before arrival in BOP custody. His conclusory allegation that he is entitled to FTCs before arrival at his official detention facility is insufficient for federal habeas relief because he "has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims."[60]

## IV.    CONCLUSION.

Pasek has not shown that the BOP exceeded the authority Congress granted it, nor that 28 C.F.R. § 523.42(a) contradicts 18 U.S.C. § 3632(d)(4)(B)(ii) or 18 U.S.C. § 3585(a). Pasek has not met his burden of showing "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." The Court accordingly **DENIES** Pasek's request for declaratory and injunctive relief, **DENIES** his petition for a writ of habeas corpus, and **DISMISSES** this action with prejudice. The Clerk shall close the case.

---

[60] *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("[C]onclusory allegations do not raise a constitutional issue in a habeas proceeding.").

**SO ORDERED**.

**SIGNED** and **ENTERED** on April 27, 2026.

_____

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**